A. F. LAWSON AND JOHN L. LAWSON, COPARTNERS
AS LAWSON BROTHERS, RESPONDENTS, V. ALFRED
THOMPSON, APPELLANT.

1. REAL ESTATE AGENT.—ACTION FOR COMMISSION. — Defendant
employed plaintiffs to sell certain land at a certain price and
promised to pay them a certain commission. About a week
thereafter plaintiffs procured a purchaser, ready, willing and
able to purchase on the terms required, and without any
written authority, executed to him a contract in defendant's
name and advanced to him their check for $200 in order to
enable him to make a part payment. The check was handed
to defendant and he was told that plaintiffs had sold the land.
He did not offer to return the check for about 10 days, and
in the mean time, expressed to the purchaser his satisfaction
with the sale. There was an unexpired lease on the premises,
.which defendant tried to buy out, but was unable to do so.
The purchaser tendered the price to plaintiffs as agents for
defendant, and demanded a deed which was refused by defend-
ant, for the reason that he could not deed except subject to
the lease. *Held,* that plaintiffs were entitled to recover their
commission.

2. ID.—FRAUD.—INSTRUCTION.—Where in an action by an agent
for commission, fraud in the sale is not pleaded and there is
no evidence thereof, an instruction that if the agent acted in
his own interest or that of the purchaser, he could not
recover, was properly refused.

3. ID.—ID.—The mere fact that an agent employed to find a pur-
chaser for land, advanced to the purchaser money to make a
part payment, is not fraud on the vendor, especially where
the vendor did not require any money to be paid down before
the delivery of the deed, as the prepayment is for his benefit
and advantage.

4. ID.—ID.—AGENT'S AUTHORITY.—RATIFICATION.—While a written
contract for the sale of lands executed by an agent without
written authority, is invalid as a writing to convey the land,

yet it is sufficient to enable the agent to recover his commission, where it has been ratified by both vendor and vendee.

(No. 498.   Decided July 27, 1894.   37 P. R. 732.)

APPEAL from the District Court of the Third Judicial District, Hon. George W. Bartch, *Judge.*

Action by A. F. Lawson and John L. Lawson, co-partners as Lawson Brothers, against Alfred Thompson to recover commission for the sale of certain real estate. From a judgment for plaintiffs, defendant appeals. *Affirmed.* In addition to the facts stated in the opinion, it may be well to notice 2 Comp. Laws 1888, § 3918, subd. 5, which provides that an agreement for the sale of real estate made by an agent is invalid, unless the authority of the agent be in writing subscribed by the party sought to be charged.

*Messrs. Brown & Henderson,* for appellant.

An agent must deal with the utmost fairness with his principal, and if he is guilty of the least unfairness or concealment, or is in any way interested against his principal he forfeits his commission. *Pratt* v. *Patterson,* 112 Pa. St. 475; 1 Am. & En. Enc. of Law, 397 to 399, inc. notes; *Kerfoot* v. *Hyman,* 52 Ill. 512; *Orton* v. *Schofield,* 61 Wis. 382; *Finnerty* v. *Fritz,* 5 Colo. 174; *Follansbee* v. *O'Rielley,* 135 Mass. 30; *Rice* v. *Wood,* 113 Mass. 133; *Farnsworth* v. *Himmer,* 1 Allen (Mass.) 494; *Walker* v. *Osgood,* 98 Mass. 348; *Scribner* v. *Collar,* 40 Mich. 375. Plaintiffs under their employment were not authorized to sell the land or to enter into a contract in writing as real estate brokers, as they had no such authority in writing. They were merely employed to find a purchaser ready, willing and able to buy and to bring him to the defendant. If the trade was not consummated then their commission was not earned. *Morris* v. *Ruddy,* 20 N. J. Eq. 236;

*Roach* v. *Coe*, 1 E. D. Smith, 175; *Coleman* v. *Garrigues*, 18 Barb. 60; *Glenworth* v. *Luther*, 21 Barb. 145; *Finnerty* v. *Fritz, supra*. Plaintiffs, by executing a contract in writing without authority and by furnishing the purchaser their own check, make it perfectly apparent that they were trying to make a bargain, which would bind the defendant and were trying to place it beyond his power to refuse to carry it out. In this they were acting against the vendor's interest and not for him, and consequently, were not entitled to any commission. Under our statute, the contract made by plaintiffs was void and the court erred in refusing to so instruct the jury, thereby leaving the jury to infer that the contract was valid. *Morris* v. *Ruddy, supra; Roach* v. *Coe, supra; Coleman* v. *Garrigues, supra; Glenworth* v. *Luther, supra; Rutenberg* v. *Mayne*, 47 Cal. 213; *Haydock* v. *Stowe*, 40 N. Y. 363.

*Messrs. Bennett, Marshall & Bradley*, for respondents.

Respondents alleged and proved a valid promise by appellant to pay a certain sum to them on the happening of a certain condition; the happening of the condition and the breach of the promise to their damage. This made out a *prima facie* case for them and if appellant relied on fraud as a defense it should have been plead and proved. If respondents were guilty of any misconduct which would amount to a defense to their action for commissions, such misconduct would be a fraud. 1 Bige. on Fraud, 232, 295, 300; *Schmidt* v. *Pfau*, 114 Ill. 500; Pomeroy's Rem. & Rem. Rights, § 687; *Lefler* v. *Field*, 52 N. Y. 621; *Hale* v. *Walker*, 31 Ia. 344-355; *Capuro* v. *Ins. Co.*, 39 Cal. 123; *Kent* v. *Snyder*, 30 Cal. 666; Bliss on Code Plead. § 329; *DeVotie* v. *McGerr*, 15 Cal. 467 (22 Am. St. 426); *Albertoli* v. *Branham*, 80 Cal. 631; *Lauer* v. *Richmond Co-Op.*, 8 Utah, 305. Fraud or breach of trust ought not lightly to be imputed, for the legal presumption is the other way.

*Prevost* v. *Gratz,* 6 Wheat. 481; *Hager* v. *Thompson,* 1 Black (U. S.), 91. The authority conferred upon the respondents was verbal and they were not authorized to enter into a written contract, but the appellant subsequently ratified their contract. The authority was exceeded innocently and not fraudulently and appellant suffered no damage thereby. The signing of the contract was authorized by the usage or custom in force here and every other real estate agent would have acted in the same way. If they made a mistake as to the validity of such custom, it did not make their act fraudulent. *Rwy. Co.* v. *Clanton,* 31 Am. Rep. 15; *Satchwell* v. *Williams,* 40 Conn. 371. Cited also: Laws & Jur. of Eng. & Am. 130; *Pleasant* v. *Fant,* 22 Wall. 116. The ratification by a principal of a broker's agreement to sell land on different terms than those contained in his instructions is equivalent to a prior authority, and the principal will be bound for the amount of commission agreed upon. Fritch Real Estate Agency, 54-5, 111; *Wigglesworth* v. *Dallison,* 2 Smith's L. C. 842 and note; *Brown* v. *McGran,* 14 Pet. 495; *LeRoy* v. *Beard,* 8 How. 467; *Hart* v. *Dixon,* 5 Lea, 336. Respondent's right to recover in no way depended on their authority to make this written contract. *Heimrich* v. *Korn,* 4 Daly, 74; *Kock* v. *Emmerling,* 22 How. 69.

MINER, J.:

This cause was brought in the district court by the plaintiffs against the defendant to recover commission as real estate brokers in Salt Lake City. Plaintiffs claim that on or about September 1, 1889, the defendant employed them, as such brokers, to procure some one "ready, willing, and able to purchase from defendant" certain premises described in the complaint; that the plaintiffs accepted the employment; that they were ready to procure

a purchaser for the land for $18,000, and were to have 5 per cent. as commission. The complaint further alleges that on or about September 20, 1889, the plaintiffs did procure one John A Groesbeck, who was then and there ready, willing, and able to purchase said premises from defendant on the terms above stated; and that plaintiffs produced him to defendant while he was so ready, willing, and able to purchase said premises on said terms; and that, therefore, the plaintiffs, having performed all of the terms and conditions of said contract, demand a judgment for $900. The answer denies specifically each and every allegation of the complaint. It denies the employment, the agreement to pay; denies the plaintiffs procured a purchaser, as they allege. The testimony offered on the part of the respondents tended to show that respondents were partners as real-estate agents. About September 1, 1889, appellant told one of respondents that he would pay him a commission of 5 per cent. if he would sell the land in question for $16,000. A short time after, appellant raised the price to $18,000, reiterating that the commission would be 5 per cent., and stating to Sibley, another real-estate agent, that respondents had the land for sale. Within about one week thereafter, respondents procured John A. Groesbeck as a purchaser, and gave to him a contract, executed by them, in appellant's name, "by Lawson Brothers, His Agents." Respondents had no written authority to execute the contract.

At Groesbeck's request, and on his promise of payment, respondents advanced as a loan to him $200, as a cash payment to bind the bargain. Thompson was then absent from the city, and respondents drew their own check, payable to him, for $200, and gave it to James M. Kennelly, who was at that time a partner of Thompson, and requested said Kennelly to send for Thompson, so that the sale might be consummated, and to also deliver the check

to him. Kennelly sent for Thompson on some of his partnership business, and when he came in, about September 26, 1889, told him that the Lawsons had sold his land for $18,000, and then handed him the check, together with other papers, at the same time saying, "There is a check there from Lawson Brothers." Thompson took the check; put it in his pocket. He went to see respondents about the sale; did not offer the check back to them, or, according to his own evidence, express any dissatisfaction with the contract they had made, except as to the unexpired lease on the premises. Thompson kept this check for at least 10 days, during which time he tried and failed to buy out the owner of the lease then on the premises, and, the value of the premises having advanced in that time, refused to carry out the contract, assigning as the only reason therefor that he could not deed except subject to the lease. The day after Thompson returned to town, Groesbeck met him in front of respondents' office, and spoke to him of the sale. Both of the respondents and Groesbeck swear that at this conversation, and after appellant had been informed of all the particulars of the transaction, he expressed his satisfaction with it, and agreed to furnish the abstract of title at once, and that Groesbeck then and there stated to him his willingness and anxiety to pay the money and receive his deed. The appellant, the only witness in his own favor as to this, testified that he did not remember anything being said about an abstract, and denied having authorized respondents to sell the land, and gave testimony tending to dispute the testimony offered by the respondents. It is uncontradicted that at this time Groesbeck was financially able and willing to purchase the land at the price fixed, and to pay the purchase price in cash; that he was buying for himself alone; and that respondents had no interest in the matter, save as appel-

lant's agents and to earn their commission. Groesbeck afterwards tendered the full amount of the purchase price to respondents, as agents of appellant, and demanded a deed, which was refused.

The appellant excepted to the refusal of the court to give his second request to charge, as follows: "The jury are instructed that if the plaintiffs were agents of the said defendant to sell his land, as claimed in the complaint herein, and as testified to by them, then it was their duty, in transacting the business, to act wholly in his interest. And if, in making the contract or transacting the business, they acted for or in the interest either of themselves or of John A. Groesbeck, or any other party than the defendant, that would be a violation of their duty, and the plaintiffs cannot recover." Had the issue of fraud or bad faith on the part of the agents been alleged in the answer, and proof introduced to sustain it, this request might very properly have been given; but as the answer only denies the allegations of the complaint, and in no manner sets up any fraud or misconduct on the part of the respondents, we do not think the question raised by the request was within the issues before the court, and was therefore properly refused. *Schmidt* v. *Pfau*, 114 Ill. 500, 2 N. E. 522; Pom. Rem. & Rem. Rights, § 687; *Lefler* v. *Field*, 52 N. Y. 621; *Capuro* v. *Insurance Co.*, 39 Cal. 123; *Kent* v. *Snyder*, 30 Cal. 666; *Hager* v. *Thomson*, 1 Black, 91.

It appears that, after the appellant knew that a written contract of sale had been given the purchaser, he received the $200 check in part payment for the land, and retained the check in his possession for about 10 days. After receiving the check, he expressed satisfaction with the sale, and no particular fault was found with it, until he discovered that he could not buy out the lease upon the property and the land had advanced in value. Then he

returned the check, and sought to avoid the sale. The signing of the contract of sale to Groesbeck was only authorized by the local custom and usage then in force. While this written contract was invalid as a writing to convey the land, yet we find the act subsequently ratified by the conduct of the appellant, and by the offer and tender of the money on the part of the respondents. The making of the written contract, or proof of a local custom authorizing the agent to make it, in no way affected the right of plaintiffs to recover their commission if they had a purchaser ready, able, and willing to pay the price asked. Thompson was in no way injured by it. Under the contract proved, the jury found respondents were entitled to their commission, and the evidence was sufficient to justify the finding.

The fact that respondents loaned the $200 to Groesbeck with which to make the first payment was no fraud on the appellant, and in no manner altered his position. Thompson, the appellant, did not require any money to be paid down before the delivery of the deed, and the prepayment of $200 was to his benefit and advantage. It seems to us that the respondents carried out the terms of the agreement, and found a purchaser who was able and ready and willing to purchase the land in question at the price offered and agreed upon by the parties. The whole case was fairly left for the consideration of the jury, under proper instructions from the court. Upon the whole record, we find no error. The judgment of the Third District Court is affirmed.

MERRITT, C. J., and SMITH, J., concur.